COMMONWEALTH vs. JAMES O'DELL, JR.

Essex. April 3, 1984. — July 11, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Indictment, Dismissal, Grand jury proceedings. *Grand Jury.*

Where a police officer testified before a grand jury that the defendant had
    made a statement incriminating himself as the driver of a vehicle in
    which a companion accused of having committed an armed robbery fled
    the scene of the crime, but the officer failed to inform the grand jury
    about portions of the statement in which the defendant denied knowing
    that his companion had intended to commit, or had committed, an armed
    robbery, the integrity of the grand jury proceeding was impaired by the
    misleading presentation, requiring dismissal of the indictment. [446-450]
Judicial review of the competency or sufficiency of evidence before a grand
    jury is limited to consideration of the sufficiency of the evidence to
    establish the identity of the accused and probable cause to arrest him.
    [450-452]

INDICTMENT found and returned in the Superior Court De-
partment on October 13, 1982.

A motion to dismiss was heard by *Garrity,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Dyanne Klein Polatin,* Assistant District Attorney, for the
Commonwealth.

*Francis T. Mayo* for the defendant.

O'CONNOR, J. The defendant was indicted for the armed
robbery of a convenience store in the city of Salem. The indict-
ment was dismissed by a judge of the Superior Court. On
appeal by the Commonwealth, the Appeals Court reversed.
We allowed the defendant's application for further appellate
review. We affirm the order of the Superior Court.

The indictment was dismissed pursuant to a motion of the
defendant which asserted that the evidence before the grand

jury was insufficient to support an indictment and that the prosecutor improperly withheld exculpatory evidence from the grand jury. The judge ruled that the evidence before the grand jury was insufficient to support an indictment. He did not reach the issue whether the prosecutor violated a duty to present exculpatory evidence. The Commonwealth appealed, and the Appeals Court by a summary disposition reversed the order dismissing the indictment. *Commonwealth* v. *O'Dell,* 16 Mass. App. Ct. 1109 (1983). The Appeals Court's order stated that the evidence was "more than sufficient to establish the identity of the defendant and probable cause to arrest him," citing *Commonwealth* v. *McCarthy,* 385 Mass. 160, 163 (1982). The order further stated that "the prosecutor had no duty to place before the grand jury evidence which is claimed to be exculpatory," citing *Commonwealth* v. *McJunkin,* 11 Mass. App. Ct. 609, 613 (1981).

The defendant argues that the evidence presented to the grand jury did not warrant a finding of probable cause to arrest him, and that therefore it was insufficient to support the indictment in accordance with the minimum standard articulated in *Commonwealth* v. *McCarthy, supra* at 163. He also argues that the standard by which the sufficiency of the evidence to warrant an indictment should be measured is its sufficiency to warrant a finding of guilt rather than its sufficiency to warrant a finding of probable cause to arrest. In addition, the defendant argues in his brief that we should require that the evidence relied on be such that it would be admissible over objection at trial. The defendant orally argued before us that if we are unwilling to hold that the evidence necessary to support an indictment must be of such a nature that it would withstand objection at trial, at least we should hold that to sustain an indictment there must be some evidence, whether competent or not, which, if believed, would rationally permit a finding of the defendant's guilt. Lastly, the defendant argues that the prosecutor improperly withheld exculpatory evidence from the grand jury.

Our affirmance of the dismissal of the indictment results from our conclusion that the integrity of the grand jury proceed-

ing was impaired by an unfair and misleading presentation to the grand jury of a portion of a statement attributed to the defendant without revealing that an exculpatory portion of the purported statement had been excised. We do not announce a rule that would require prosecutors in all instances to bring exculpatory evidence to the attention of grand juries. We are satisfied in this case, however, that the withholding of a portion of the defendant's statement distorted the portion that was repeated to the grand jury in a way that so seriously tainted the presentation to that body that the indictment should not have been allowed to stand. The indictment is to be dismissed, therefore, but without prejudice to the right of the Commonwealth to seek a new indictment. The defendant has not argued that the indictment should be dismissed with prejudice, and we are not satisfied that the Commonwealth's presentation to the grand jury was so wilfully deceptive or otherwise egregious that the Commonwealth should be precluded from seeking to reindict. See *Commonwealth* v. *Salman,* 387 Mass. 160 (1982); *Commonwealth* v. *Manning,* 373 Mass. 438 (1977).

Only one witness testified before the grand jury. He was a detective in the Salem police department. The detective testified that on September 21, 1982, about 8 P.M., he responded to a call concerning an armed robbery at Richdale Store on the corner of North and Oakland Streets in Salem. At the store he spoke with the store clerk, who stated that approximately three to five minutes earlier a white male wearing a red Adidas jacket entered the store and demanded money from the cash register. She stated that the robber threatened her with a handgun which was tucked inside his belt and left with approximately $100 from the store.

The detective testified that shortly after the incident an individual told a police officer that he had observed a black van parked at the corner of Nursery and North Streets, directly opposite Richdale Store, that he had observed a man hurrying into the van and telling the driver, "Let's get the hell out of here," and that the van sped away in the direction of the city of Beverly. The individual was said to have provided a registration number, according to the detective. Approximately one

hour later, Beverly police stopped the van and a man named Gordon Preston was inside. Preston was wearing a red Adidas jacket and was in possession of approximately $100 in cash. A handgun was also found in the van. Preston was taken to the Beverly police station.

The detective also gave the following evidence relative to the defendant. As a result of information received by a Salem police officer, the police, including the detective, went to an address in Beverly, where they found the defendant and charged him with armed robbery. The detective told the grand jury that the defendant then said that he had been in Salem with Preston, that he had been driving a van and had parked it across the street from the store, and that when Preston ran back and told him "to get the hell out of here," that is what he did. The detective also testified that the van, driven by the defendant, belonged to Preston, and that Preston had been identified by the store clerk at the Salem District Court the next day. After the detective's grand jury testimony was completed, a juror asked, "What about the driver, was he supposed to be involved in this thing or not?" The detective answered, "We believe he was. He was the driver of the getaway van or the car." The juror then asked whether the driver was being charged at that time, and the assistant district attorney presenting the matter said, "Yes, he is. That is the defendant Mr. O'Dell who was the driver of the van at the time." The grand jury indicted Preston and the defendant.

The defendant's statement, which the detective related to the grand jury, was a portion of his statement contained in a report prepared by the Salem police and signed by the defendant. Although the police report is undated, the Commonwealth does not challenge the defendant's assertion that the report was in the possession of the Commonwealth at the time of the indictment. The report states that "James O'Dell admitted being in the van of Gordon Preston in Salem at approximately 8 P.M. and parking it on a side street by Richdale's store. *He denies knowledge of knowing that Preston had any intention of pulling a robbery, or that he pulled a job after he ran back to the van.* He admitted that Preston yelled "Let's get out of here' *but*

*claims he thought that Preston may have only done some shop-lifting.* O'Dell stated that he drove over the Kernwood bridge to North Beverly . . ." (emphasis added).

We do not consider the omission of the italicized words from the defendant's statement to have been a mere withholding of exculpatory evidence. Rather, presentation of the defendant's edited statement tended to distort the meaning of that portion of the defendant's statement that was repeated to the grand jury and, in addition, strongly suggested, incorrectly, an admission of guilt by silence. It was represented to the grand jury that, after the defendant had been told about the armed robbery committed by Preston, and after the defendant had been accused of participating in the robbery, he made a statement admitting that he had driven Preston to the store, that he had waited for Preston to come out of the store, and that he had quickly driven away in response to Preston's urging, thus assisting Preston's getaway. It is possible, and perhaps likely, particularly in view of the responses of the detective and the assistant district attorney to one juror's questions, that the grand jurors, being untrained in the law and uninformed that the defendant had denied having knowledge of Preston's criminal intent, incorrectly interpreted the defendant's statement as a confession that he was a willing participant in the crime. Clearly, the defendant's full statement was not such a confession, however.

Furthermore, if the defendant had not known in advance what Preston intended to do in the store, or had not known, when Preston reemerged, what he had done, it would have been natural for the defendant to have disclaimed that knowledge at the time that he was admitting the extent of his activities with Preston. The grand jury could reasonably have concluded from the evidence presented to it that the defendant made no such disclaimer and that the reason for his failure to do so was that he was a coplanner of the robbery. The defendant's silence in the circumstances would be inconsistent with innocence. We are satisfied, therefore, that the integrity of the grand jury proceedings was impaired. For that reason, the indictment should be dismissed. See *Commonwealth* v. *Salman, supra* at

166; *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 654-657 (1979); *Commonwealth* v. *Lincoln,* 368 Mass. 281, 285 (1975).

Although it is not essential to our decision that we discuss the sufficiency of the evidence presented to the grand jury to support the indictment, the subject is one of general concern, the issue has been fully argued by the parties, and it may arise again in this case if reindictment is sought. In *Commonwealth* v. *McCarthy,* 385 Mass. 160, 163 (1982), we held that an indictment cannot stand unless, at a minimum, it is supported by evidence sufficient to establish probable cause to arrest. In that case it was not necessary for us to decide whether a stricter standard must be met. *Id.* at 162 n.5. That issue is presented here because the evidence presented to the grand jury would appear to justify a finding that when the arrest was made the facts known by the officers "and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed . . . an offense," *Commonwealth* v. *Stevens,* 362 Mass. 24, 26 (1972), quoting *Beck* v. *Ohio,* 379 U.S. 89, 91 (1964), although the evidence probably would not have been sufficient to overcome a motion for a required finding of not guilty at a trial.

Our long-standing rule has been that a court will not review the competency or sufficiency of the evidence before a grand jury. *Commonwealth* v. *Salman, supra* at 166. *Commonwealth* v. *McCarthy, supra* at 161-162. *Commonwealth* v. *Robinson,* 373 Mass. 591, 592 (1977), and cases cited. Despite that general rule, however, in *Commonwealth* v. *McCarthy, supra,* we reviewed the evidence before the grand jury, and we held that the grand jury's failure to hear any evidence of criminal activity by the defendant justified dismissal of the indictment. *Id.* at 163-164. We announced the rule that "at the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him." *Id.* at 163. Our departure from the general rule showed a proper concern for the integrity of grand jury proceedings without substantially affecting the grand jury's historic function as an investigative and accusatory body, or its procedures. We did not depart from the rule that an indictment may be based solely on hear-

say, *Commonwealth* v. *Gibson,* 368 Mass. 518, 522-525 (1975),[1] Mass. R. Crim. P. 4 (c), 378 Mass. 849 (1979). Furthermore, a requirement of sufficient evidence to establish the identity of the accused and probable cause to arrest him is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding. See *Myers* v. *Commonwealth,* 363 Mass. 843, 848-849 (1973), quoting *Brinegar* v. *United States,* 338 U.S. 160, 173 (1949) ("There is a large difference between the two things to be proved [guilt and probable cause to arrest or search] . . ."); K.B. Smith, Criminal Practice and Procedure § 104 (1983) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction").

In view of the long history of the grand jury, we are unwilling to curtail further than we did in *Commonwealth* v. *McCarthy, supra,* the general rule that a court will not review the competency or sufficiency of the evidence before a grand jury. We recognize that the indictment process and the probable cause hearing in a District Court "are alternative means for establishing probable cause to hold a defendant for trial," *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 530-531 (1974), and that, therefore, it might seem anomalous that at a probable cause hearing the "examining magistrate should view the case as if it were a trial and he were required to rule on whether there is enough credible evidence to send the case to the jury," *Myers* v. *Commonwealth, supra* at 850, while the evidence before a grand jury will be considered to be legally sufficient if it only meets the less strict probable cause to arrest standard. We also recognize that much of our reasoning in *Myers* can be applied with force to grand jury proceedings. However, in *Myers, supra* at 856, we were interpreting G. L. c. 276, § 38, and we concluded that that statute mandated that probable cause hearings in a District Court be conducted as trials. There is no similar statute governing grand jury proceedings. Instead,

---

[1] Once again we emphasize that "sound policy dictates a preference for the use of direct testimony before grand juries." *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 656 (1979).

grand jury proceedings have a long history in which judicial review for sufficiency of the evidence has been sharply limited.[2]

> *Order dismissing indictment affirmed.*

---

[2] The American Law Institute Model Code of Pre-Arraignment Procedure, §§ 330.4, 330.5 and 340.5 (1975), provides for dismissal of indictments not supported by sufficient evidence, which may include certain types of hearsay, to support a conviction. However, we are unaware of any jurisdiction in which a court has established such a standard by decision, in the absence of a statute or formal rule of criminal procedure. A majority of the States do not allow challenges to the sufficiency of the evidence before a grand jury. Y. Kamisar & others, Modern Criminal Procedure 1048-1050 (5th ed. 1980). The few States that do allow such challenges, see P. Arenella, Reforming the Federal Grand Jury and the State Preliminary Hearing to Prevent Conviction Without Adjudication, 78 Mich. L. Rev. 463, 581 n.4 (1980), do so pursuant to statute or by a formal rule of criminal procedure. See Federal Grand Jury: Hearings on H.J. Res. 46, H.R. 1277, and Related Bills Before the Subcommittee on Immigration, Citizenship and International Law of the House Committee on the Judiciary, 94th Cong., 2d Sess. at 724 & nn. 55, 56. The American Bar Association committee which drafted the Model Grand Jury Act considered a provision which would have allowed the dismissal of indictments based on insufficient evidence.. See P. Arenella, Reforming the State Grand Jury System: A Model Grand Jury Act, 13 Rutgers L.J. 1, 25 (1981). This provision was deleted in the final Model Grand Jury Act. ABA Section of Criminal Justice, ABA Grand Jury Policy and Model Act (1977-1982) (1982).