Garsh, J.
The defendant, Anna Pavao, moves, pursuant to G.L.c. 233, §20, Fourth, to quash the grand juiy testimony of Vanessa Pavao as well as any testimony of Detective Sergeant Neto that relays information obtained from Vanessa Pavao. The defendant further asserts that without such testimony, the grand jury was presented with insufficient evidence to establish probable cause to arrest her for armed robbery or assault by means of a dangerous weapon. An eviden-tiary hearing was held at which two witnesses testified. For the reasons set forth below, the defendant’s motions to quash the grand jury testimony is allowed in part and denied in part, and the defendant’s motion to dismiss is denied.
FINDINGS OF FACT
Based upon all the credible evidence and reasonable inferences drawn therefrom, the court finds the following facts.
Vanessa Pavao (“Vanessa”) is the daughter of Anna Pavao (“Pavao”), the defendant. Vanessa was born on November 15, 1985.
On July 29, 1999, Pavao was sentenced to a term of not more than two and one-half years nor less than two years and also received a term of probation of five years. Special conditions of probation included drug treatment and counseling.
Following her release from incarceration on May 15, 2001, Pavao resided with her parents, grandmother, and her three children, including Vanessa, at 181 Barnaby Street in Fall River. Venessa and her siblings had resided at their grandparent’s house with Pavao prior to Pavao’s incarceration as well. Early in May of 2002, Pavao moved with Vanessa and Vanessa’s two brothers to Pavao’s own home nearby at 175 Barnaby Street.
For her first year after release from prison, Pavao fully complied with all her conditions of probation. She was employed. Her probation level was reduced to moderate supervision. Once the father of two of her children was released from prison, her lifestyle, however, began to change.
On November 10, 2002, Pavao voluntarily admitted herself to a detoxification facility at AdCare. When she entered AdCare, she tested positive for cocaine, marijuana, opiates and barbiturates. On November 14, 2002, Pavao advised her probation officer that she had entered AdCare. On November 16, 2002, Pavao returned to her home at 175 Barnaby Street, Fall River, where she again lived with her three minor children.
On November 20, 2002, Pavao, accompanied by Vanessa, met with her probation officer, who found her to be incoherent, irrational and intoxicated. The probation officer sought and obtained an emergency warrant for Pavao’s arrest and, on November 21, 2002, Pavao was civilly committed for a period not to exceed thirty days to MCI Framingham pursuant to G.L.c. 123, §35. The probation officer also sought that she be held without bail pending a probation surrender hearing because the Probation Department understands that MCI Framingham will not provide treatment unless a person civilly committed under section 35 is also being held without bail. Pavao was held without bail without prejudice, with the court noting that the defendant was to receive substance abuse counselling at the First StepProgram at MCI Framing-ham. A final surrender hearing scheduled for November 27, 2002 was continued to December 3, 2002 and then continued to January 3, 2002, by which time Pavao had been indicted for armed robbeiy and assault by means of a dangerous weapon, and the probation surrender hearing again was continued to track these new indictments. Bail was set at $7,000 cash, $70,000 surety. Pavao has been unable to post bail and has remained in custody.
Shortly after Pavao was arrested on the emergency warrant, Vanessa and her siblings moved back into their grandparents’ home where they have remained. Her mother’s furniture remains in the residence at 175 Barnaby Street.
*426 Pavao did not abandon her children on November 20, 2002 or when she was civilly committed. She had not abandoned her children by December 19, 2002.
On November 21, 2002, a detective, who was investigating an armed robbery, interviewed Vanessa regarding an incident that had occurred on November 17, 2002. On December 19, 2002, Vanessa was called to testify before a grand jury. Her testimony provided inculpatory evidence against her mother. In addition, the detective who had interviewed Vanessa related to the grand jury what she had told him on November 21, 2002.
On November 17, 2002, November 21, 2002, and December 19, 2002, Vanessa had not yet reached eighteen years of age. Before her mother was civilly committed, Vanessa lived with Pavao in a place of residence maintained as a home and Pavao was responsible for Vanessa’s day-to-day care. Vanessa was living with her mother on November 17, 2002, November 21, 2002, and December 19, 2002.
DISCUSSION
The Legislature has mandated that a minor, un-emancipated child living with a parent cannot testify in a criminal proceeding against a parent with whom the child lives, except when the victim of the crime is a member of the parent’s family who resides in the parent’s household. G.L.c. 233, §20, Fourth.[1] It is undisputed that, at all relevant times, Vanessa was a minor,[2] and the Commonwealth does not contend that she was emancipated.
Testimonial privileges are to be construed strictly because they constitute an exception to the general dufy imposed on all people to testify. Commonwealth v. Corsetti, 387 Mass. 1, 5 (1982). Nevertheless, wheij the text of a statute is clear and unambiguous, the words used must be accorded their plain and ordinary meaning. Commonwealth v. Ray, 435 Mass. 249, 252 (2001). Common usage can be derived from sources such as the term’s use in other legal contexts and dictionary definitions. Framingham Clinic, Inc. v. Zoning Board of Appeals of Framingham, 382 Mass. 283, 290 (1981). The language of a statute itself is the principal source of insight into the legislative purpose. “When the words are clear and, when assigned their ordinary meaning, yield a workable and logical result, we interpret the statute without resort to extrinsic aids, such as legislative history.” Foss v. Commonwealth, 437 Mass. 584, 586 (2002).
Motion to Quash
Detective’s Interview of Vanessa and His Grand Jury Testimony
The defendant’s argument that the statute precludes a minor child from being interviewed by a police officer ascribes to the statutory terms “testify” and “criminal proceeding” strained meanings that bear no resemblance to the words actually contained in the statute. The plain and ordinary meaning of the word “testify” is “to make a declaration of truth or fact under oath.” The American Heritage Dictionary of the English Language 1855 (3d ed. 1996). When Vanessa spoke with the detective, she was neither under oath nor required to affirm formally her statements. Nor were Vanessa’s statements made at a “criminal proceeding.” While the statute does not limit that term to grand jury proceedings and trials, neither does it expand it beyond its ordinary limit to encompass pre-indictment, investigatory interviews undertaken by the police that are not part of a legal court action. Accordingly, Vanessa was not testifying in a criminal proceeding against her mother when she spoke with the detective.
Whether prohibiting police officers from interviewing minors would foster the legislative intent expressed in G.L.c. 233, §20, Fourth is not controlling. “The statute was enacted after various amendments, revisions, and a public hearing date, and the privilege that thus emerged had the benefit of public debate during its creation and definition.” In re Grand Jury Subpoena, 430 Mass. 590, 593 (2000). Any expansion must be enacted by the Legislature.
When the detective related what Vanessa had said to him to the grand juiy, the detective, and not Vanessa, was testifying. The defendant is not entitled to quash the detective’s hearsay testimony given to the grand juiy.
Vanessa’s Grand Juiy Testimony
If Vanessa was “living with” her mother on December 19, 2002, her testimony that day before the grand juiy must be quashed.[3] The Commonwealth contends that the defendant’s substance use while on probation and her observed incoherency take her outside the reach of the statute. A civil commitment under section 35 of chapter 123 is for the purpose of inpatient care in a facility approved for the care and treatment of alcoholism and substance abuse. A person so committed maybe released prior to the expiration of the period of commitment, which is not to exceed thirty days, if it is determined that release of said person will not result in a likelihood of serious harm. G.L.c. 123, §35. While Pavao may not have been the ideal mother, she nevertheless lived with her children; until she was arrested on the emergency warrant and civilly committed for up to thirty days, she was living with them in a home to which she fully intended to return after her civil commitment. There is no evidence that Pavao intended to do anything else but return to her children and to her residence before Vanessa testified before the grand juiy. Prior to her indictment, while she was at risk of being incarcerated for violating her probation, it would have been reasonable for Pavao to assume that, after being found in violation of the terms of her probation, she likely would be restored to probation, perhaps with additional conditions, in view of the fact that she had fully complied with all probationary terms for one year, was employed, had started taking drugs and drinking only when the father of two *427 of her children was released from prison, voluntarily entered AdCare, and had kept probation advised of her situation. There is no evidence that Pavao took any action which entailed a transfer of all the rights subsumed in legal custody. She did not abandon Vanessa such that she stopped being a “parent” within the meaning of G.L.c. 233, §20.
The Commonwealth also argues that, although Vanessa may have been “living with” her mother on November 20, 2002, she was not still “living with” her on December 19, 2002 when Pavao was not physically in the same residence as her child and lost the ability to exercise to day-to-day supervision. The testimonial disqualification statute does not require that the minor live with a parent “who is responsible for his or her day-to-day care,”[4] but merely that the minor live with the parent against whom testimony is sought. If continuous physical presence is a necessary pre-req-uisite to be found to be “living with” a parent within the meaning of the statute, then a child staying with grandparents while her parents are away on thirty-day vacation could be summonsed to testify as could a child whose mother is hospitalized for physical ailments. So too could a child whose parent is arrested and not released on personal recognizance even if the parent fully expects to raise the necessary bail money within thirty days. If physical presence were the determinative factor, then even children at a sleep-over summer camp could be summonsed, but not their counterparts at day camp. In such circumstances, it would be wholly antithetical to the apparent objectives of the statute to conclude that the minor’s testimony may be compelled.
The legislature undoubtedly intended the phrase “living with” to encompass those situations in which a parent is temporarily absent from the home, whether that absence is voluntary or involuntary. Indeed, that is how the phrase has been defined or construed in other contexts. In Legg’s Case, 358 Mass. 615 (1971), for example, the Court, construing a presumption in the Workers’ Compensation Act, G.L.c. 152, §35A,[5] stated that “the statutory phrase ‘with whom she lives’ . . . ‘mean[s] maintaining a home and living together in the same household, or actually cohabitating under conditions which would be regarded as constituting a family relation. There may be temporary absences and incidental interruptions arising out of changes in the house or town of residence, or out of travel for business or pleasure.’ ” Id. at 616, quoting In re Nelson, 217 Mass. 467, 469 (1914). See also Lopes’ Case, 332 Mass. 39, 40-41 (1954) (husband deemed to be living with his wife at time of her death even though he had left the country in an effort to regain his health). Similarly, an absence occasioned by hospitalization does not result in termination of benefits paid to relatives caring for dependent children.[6] 106 C.M.R. §303.230(A) .While a parent’s prolonged absence may so destroy the relationship between parent and child that the minor is no longer “living with” the parent, an involuntary civil commitment not to exceed thirty days amounts to a temporary absence that does not permit a minor living with a parent immediately prior to the commitment to testify in a criminal proceeding against the committed parent.[7] Accordingly, the defendant is entitled to quash Vanessa’s grand jury testimony.
Motion to Dismiss
The defendant argues that if the testimony that should not have been heard by the grand jury is excised, the grand jury heard insufficient evidence to establish probable cause to arrest Pavao. Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). That argument, however, is premised on the assumption that both Vanessa’s testimony and the detective’s testimony must be struck. As the defendant concedes, if the detective’s testimony was proper, and the court has found that it was, there was sufficient evidence to establish probable cause.
The defendant alternatively seeks dismissal under Commonwealth v. O’Dell., 392 Mass. 445, 450 (1984), on the grounds that “such evidence violated the integrity of the grand juiy through the introduction and utilization of the prohibited testimony.” Although the grand jury was not permitted to take Vanessa’s testimony into account in determining whether there was sufficient evidence to indict her mother, its presentation did not so seriously taint the remainder of the grand jury presentation that the indictments should not be allowed to stand. The defendant has not shown that the “integrity of the grand jury proceeding was impaired.” Id. at 446-447. Dismissal of the indictment is not warranted.[8]
ORDER
For the reasons stated above, it is ORDERED that the defendant’s motion to quash be and hereby is ALLOWED insofar as it pertains to the grand jury testimony of Vanessa Pavao and DENIED insofar as it pertains to the testimony of Detective Sergeant Glenn Neto. It is further ORDERED that the defendant’s motion to dismiss the indictment of armed robbery be and hereby is DENIED.

An unemancipated, minor child, living with a parent, shall not testify before a grand jury, trial of an indictment, complaint or other criminal proceeding, against said parent, where the victim in such proceeding is not a member of said parent’s family and who does not reside in the said parent’s household . . .” G.L.c. 233, §20, Fourth.

The statute does not define the word “minor.” Accordingly, a minor for purposes of this statute means any person who is under eighteen years of age. See G.L.c. 4, §7, cl. 48th.

Because the court has found that Vanessa was living with her mother on December 19, 2002, it is unnecessary to reach the defendant’s alternative argument that a person who is not living with a parent is permanently disqualified from testifying as to an event that occurred when such person was a minor and living with the parent. There is no dispute that the event at issue occurred when Vanessa was living with her mother.

By contrast, 106 C.M.R. §303.200 states that “[t]o be eligible [for Aid to Families with Dependent Children], the dependent child must live with a relative responsible for his or her day-to-day care in a place of residence maintained as a home."

“For the purposes of this section the following persons shall be conclusively presumed to be wholly dependent for support upon an employee: (a) A wife upon a husband with whom she lives at the time of his injury.” G.L.c. 152, §35A.

 106 C.M.R. §303.230(A) provides that the “living with” requirement contained in 106 C.M.R. §303.200, see n. 4 supra, “is met if... [t]he child or relative is temporarily absent from the home so long as the grantee-relative exercises responsibiliiy for the care and control of the child. Absences include attendance at educational institutions or specialized schools, hospitalization, employment, visits, and similar situations of a temporary nature.” The “so long as” language in 106 C.M.R. §303.230(A) reflects the requirement in 106 C.M.R. §303.200, not found in the disqualification statute, that the grantee-relative be responsible for the minor’s day-to-day care.

This court need not reach whether Vanessa is still living with her mother despite the length of her mother’s absence by virtue of her inability to post bail.

The Supplemental Memorandum argues that the integrity of the grand jury was impaired because the “coercive means employed by the police to obtain the child’s statement is of such an egregious nature that it should be regarded as being on the same level as a misstatement of material facts or the introduction of false testimony which result in the impairment of the integrity of the grand juiy proceedings.” This was not a basis of the motion to dismiss that was filed and no testimony was elicited from any witness with respect to alleged coercion. The defendant will not be permitted to reopen and present evidence on this issue in connection with this motion. This judge does not retain jurisdiction over this case to hear any other motion that may be filed under Commonwealth v. O'Dell 392 Mass. 445, 450 (1984), alleging a ground different from that in the pending motion to dismiss.