COMMONWEALTH *vs.* SEAN P. MORAN.

Suffolk. February 3, 2009. - May 22, 2009.

Present: MARSHALL, C.J., SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Armed Assault with Intent to Murder. Practice, Criminal,* Dismissal, Indictment, Grand jury proceedings. *Intent.*

A Superior Court judge erred in dismissing an indictment against a criminal defendant charging him with armed assault with intent to murder in violation of G. L. c. 265, § 18 (*b*), on the ground that there was insufficient evidence before the grand jury on the element of the defendant's specific intent to kill, where the evidence before the grand jury (i.e., the defendant's threat to kill the victim, uttered while the defendant held a handgun to the victim's head; other extremely violent acts by the defendant; and a history of violence by the defendant toward the victim), appropriately viewed in the light most favorable to the Commonwealth, warranted a finding of probable cause that the defendant had intended to kill the victim. [883-887]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 6, 2008.

The case was reported by *Cordy,* J.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

*John D. Cheverie* for the defendant.

BOTSFORD, J. A judge in the Superior Court dismissed an indictment against the defendant charging him with armed assault with intent to murder his girl friend in violation of G. L. c. 265, § 18 (*b*).[1] The issue raised in this appeal by the Commonwealth is whether the indictment was properly dismissed on the ground

---

[1]General Laws c. 265, § 18 (*b*), provides as follows:

"Whoever, being armed with a dangerous weapon, assaults another with intent to rob or murder shall be punished by imprisonment in the state prison for not more than 20 years. Whoever, being armed with a firearm, shotgun, rifle, machine gun or assault weapon assaults another with intent to rob or murder shall be punished by imprisonment in state prison for not less than five years and not more than 20 years."

that there was insufficient evidence presented to the grand jury on one element of the crime: a specific intent to kill. Because we conclude that the evidence before the grand jury was sufficient to prosecute the defendant for armed assault with intent to murder, we reverse the order of the Superior Court.

1. *Background.* On January 17, 2008, a grand jury returned indictments against the defendant for several crimes, including armed assault with intent to murder.[2] All the charges arose out of a series of altercations between the defendant and his then girl friend, Kristen Chipman, that are alleged to have occurred in 2006 and 2007. Evidence presented to the grand jury included the following.[3] During the time period in question, the defendant was employed as a police officer in Duxbury, Chipman was a police officer in Milton, and they were romantically involved. On July 4, 2006, the defendant was driving Chipman home from a fireworks display when they got into an argument. They arrived at Chipman's home where they continued arguing in the garage; the argument ended with the defendant shoving Chipman against the garage wall. Nonetheless, their relationship continued, and some time later, the defendant and Chipman bought a home together in Quincy. By that time they had been dating for eight months.

The defendant's thirtieth birthday was October 18, 2007. Several of the defendant's friends took him out for an evening celebration on October 17, 2007. Chipman did not attend the celebration, but was instead on duty as a patrol officer in Milton during the night shift. Around 1:30 A.M., the middle of her shift, Chipman took a break and returned home to let her dog out. She arrived in her police uniform, and was carrying her department-issued, loaded gun holstered in her uniform safety belt, as well as her police radio. When she entered the house, she met the defendant in their bedroom, and they argued. The defendant called her a

---

[2]The additional indictments against the defendant charged intimidation of a witness, G. L. c. 268, § 13B; assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b); assault with a dangerous weapon, G. L. c. 265, § 15 (b) (two indictments); malicious destruction of property over $250, G. L. c. 266, § 127; assault and battery, G. L. c. 265, § 13A (three indictments); and threat to commit a crime, G. L. c. 275, § 2.

[3]Kristen Chipman testified before the grand jury, and much of the evidence described in the text is based on her testimony.

"cunt," and she slapped him across the face. The defendant responded by pulling the alarm clock from the wall and throwing it at Chipman, who then ran out of the bedroom and down the stairs with the defendant chasing after her. He grabbed her arms, threw her on the couch, and continued to yell at her. He then threw her on the floor where she landed on her back and hit her head. She managed to get up and move away from the defendant. The defendant went into the dining room where he turned over the glass-top dining room table, which shattered on hitting the floor. Chipman attempted to take a photograph of the property damage using her cellular telephone, but the defendant tore the telephone away before she was able to do so. The defendant then ran upstairs to grab his police-issued gun from the "lock box" in a spare room. He went downstairs with his gun, held it to his head, and threatened to kill himself. Chipman asked him to put down the gun; he unloaded his gun and threw it down hard enough to leave a dent in the floor. Chipman then ran to the breezeway, where the defendant followed her and continued to yell at her. She warned the defendant that she was going to call her lieutenant on her police radio. In response, the defendant took her radio, threw it on the ground, and threatened to kill her and himself, telling Chipman that the lieutenant would not be able to get into their house. Then the defendant moved behind Chipman, grabbed for her gun holstered in her belt, and wrestled the gun away from her. He faced Chipman, pointed the gun at her head, and ordered her "to get out of the house or else he would f'ing kill [her]." Chipman said, "Sean, stop. Drop the gun. Sean, please stop." The defendant dropped the gun, Chipman grabbed it, took her dog, got into her police cruiser, and left the house. She returned to work. Around 7:30 A.M., Chipman returned to the house after her shift and attempted to get some sleep. The defendant woke her up, grabbed her arms, shook her, and yelled, "I hate you." She ran outside the house; the defendant chased and caught up to her and then twice attempted to throw her into their covered pool. The defendant went inside and yelled for Chipman to join him there so the neighbors could not see them. Chipman telephoned her mother, requesting that she come over. Chipman's mother arrived, and told the defendant to leave the house and stay with his parents for a few days. The defendant left.[4]

---

[4]The grand jury heard additional evidence about another altercation between

Following the defendant's arraignment, he moved to dismiss the indictment for armed assault with intent to murder, challenging the sufficiency of the evidence pursuant to *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982) (*McCarthy*).[5] After a hearing, the judge allowed the motion. She reasoned that the crime required proof "of a specific intent to kill the victim in the course of assaulting her," and that the evidence presented to the grand jury was insufficient with respect to this element. The Commonwealth then filed a petition for relief pursuant to G. L. c. 211, § 3, in the county court, and a single justice reported the case to this court without decision.[6]

2. *Discussion.* The standard delineated in *McCarthy* governs our analysis in this case: "[A]t the very least the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him" (citations omitted). *McCarthy*, 385 Mass. at 163. See *Commonwealth* v. *Stevens*, 362 Mass. 24, 26 (1972), quoting *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964) (describing probable cause to arrest as "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense").

The *McCarthy* case must be considered against the backdrop of our time-honored rule that courts ordinarily do not "inquire into the competency or sufficiency of the evidence before the

the defendant and Chipman that occurred on November 9, 2007, three weeks after the October 18 incident, in which the defendant grabbed Chipman, twice pushed her head against a chain link fence and then smashed the console and dashboard of the truck in which they were traveling.

[5]The defendant also moved to dismiss the indictment charging him with malicious destruction of property valued over $250, but did not go forward with that aspect of his motion, stating that he was reserving his right to do so at a later time. We do not consider the indictment charging malicious destruction of property.

[6]The Commonwealth has not explained or discussed why it initially sought relief pursuant to G. L. c. 211, § 3, rather than appealing to the Appeals Court from the dismissal of the indictment pursuant to G. L. c. 278, § 28E, and Mass. R. Crim. P. 15 (a) (1), as appearing in 422 Mass. 1501 (1996). The Commonwealth should have pursued such a course. See *Commonwealth* v. *Friend*, 393 Mass. 310, 311-314 (1984). Accord *Commonwealth* v. *Ortiz*, 425 Mass. 1011, 1012 (1997). However, because the single justice reported the case to this court without decision, and it is fully briefed, we address the merits.

grand jury." *Commonwealth* v. *Robinson*, 373 Mass. 591, 592 (1977), quoting *Commonwealth* v. *Galvin*, 323 Mass. 205, 211-212 (1948). See *Commonwealth* v. *Coonan*, 428 Mass. 823, 825 (1999); *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450-451 (1984).[7] *McCarthy* represents an exception to that rule; fundamental considerations of fairness require that a court dismiss an indictment where, as in *McCarthy* itself, the "grand jury receives no evidence of criminality on the part of the accused." *Commonwealth* v. *Coonan, supra,* quoting *Commonwealth* v. *Angiulo*, 415 Mass. 502, 510 (1993). See *McCarthy*, 385 Mass. at 163; *Connor* v. *Commonwealth*, 363 Mass. 572, 577-578 (1973). See also *Commonwealth* v. *Truong Vo Tam*, 49 Mass. App. Ct. 31, 36-37 (2000). This case does not present an instance warranting judicial intrusion into the grand jury's proceedings or determination.

The crime of armed assault with intent to murder has three elements: assault; intent to kill; and malice, which in this context means an absence of justification, excuse, or mitigation. See *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985). Accord *Commonwealth* v. *Johnston*, 446 Mass. 555, 558 (2006). The grand jury must be presented with evidence on each of the three elements, but the defendant here challenges only the evidence concerning the element of intent. The evidence of the defendant's intent included the defendant's own threatening statement that he "would f'ing kill [Chipman]" if she did not leave the

---

[7] The grand jury's historic function is as an investigative and accusatory body. Its purpose is not to adjudicate. The grand jury have "the dual function of determining whether there is probable cause to believe a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 532 (1974). See *Commonwealth* v. *McLeod*, 394 Mass. 727, 733, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985).

This court has stated that the limited departure from the general rule of noninterference represented by *Commonwealth* v. *McCarthy*, 385 Mass. 160, 161-162 (1982), "showed a proper concern for the integrity of grand jury proceedings without substantially affecting the grand jury's historic function as an investigative and accusatory body, or its procedures." *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984). It should be noted, however, that the *O'Dell* case illustrates an additional departure from the rule of noninterference, which is that courts will review a claim that "the integrity of the grand jury proceedings was impaired." *Id.* at 449-450. See *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 655-657 (1979). There is no argument in this case that the integrity of the grand jury proceedings was impaired.

house. Even if these words would not be adequate in themselves to demonstrate an intent to kill, they were uttered while the defendant pointed Chipman's loaded gun — which he had forcefully wrested from her — at her head. Moreover, the evidence indicated that the words were preceded by a series of extremely violent acts by the defendant, acts that included throwing Chipman on the floor, turning over a glass-topped table with enough force to cause the glass to shatter, tearing her cellular telephone from her hands, grabbing her police radio and throwing it on the ground, and the defendant's grabbing his own gun and threatening to kill himself as well as Chipman. Finally, the evidence reflected a pattern of violence by the defendant toward Chipman, beginning more than one year earlier, and continuing beyond the October 18 incident into November, 2007. See note 4, *supra.* Cf. *Commonwealth* v. *White*, 60 Mass. App. Ct. 193, 201 (2003) (in affirming conviction of assault with intent to murder his girl friend, court concluded that "the jury could certainly consider the mode of assault as consistent with a pattern of increasingly severe acts of violence by the defendant"). Cf. also *Commonwealth* v. *Jordan (No. 1)*, 397 Mass. 489, 492 (1986).

Direct evidence of a person's specific intent is not always available, but may be inferred from the facts and circumstances presented. See *Commonwealth* v. *Gollman*, 436 Mass. 111, 116 (2002); *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980). Appropriately considered in the light most favorable to the Commonwealth, see *Commonwealth* v. *Levesque*, 436 Mass. 443, 444 (2002), the evidence before the grand jury warranted a finding of probable cause that the defendant intended to kill Chipman on October 18, 2007.[8] See *Commonwealth* v. *Smith*, 58 Mass. App. Ct. 381, 386 (2003) (evidence sufficient to support indictment for

---

[8]The judge expressed concern that the defendant's statement about killing Chipman was contingent: "that he *would* kill her *if* she did not leave" (emphasis in original). The grand jury were not required to credit the defendant's declaration of the condition as determinative of his intent; it could find that conditional or not, the defendant had an intent to kill Chipman at the time he assaulted her with the pointed gun. See *Holloway* v. *United States*, 526 U.S. 1, 11 (1999), quoting R. Perkins & R. Boyce, Criminal Law 647 (3d ed. 1982) ("a defendant may not negate a proscribed intent by requiring the victim to comply with a condition the defendant has no right to impose; '[a]n intent to kill, in the alternative, is nevertheless an intent to kill' "). In any event, we agree with the Commonwealth that it was not necessary or appropriate to

assault with intent to murder where defendant became combative, bit officer, and yelled, "I'm HIV positive. I hope I kill you and your fucking kids").

The motion judge determined the evidence showed only that the defendant threatened to kill Chipman and intended to put her in fear, but did not support an inference of a specific intent to kill; and that no jury could rationally convict the defendant of armed assault with intent to murder. In doing so, the judge appeared to conflate the standards applicable to reviewing the sufficiency of evidence to support an indictment, and whether there was sufficient evidence to warrant a finding of guilt at trial. The standards are not the same. See, e.g., *Commonwealth* v. *Roman*, 414 Mass. 642, 647 (1993) ("[I]t seems likely that the evidence presented to the grand jury would have been insufficient to support a guilty verdict. . . . However, as we have said, in order to indict the defendant, the grand jury did not need evidence warranting a finding of the defendant's guilt beyond a reasonable doubt. It needed only evidence establishing probable cause to arrest." [Citation omitted.]); *Commonwealth* v. *O'Dell*, 392 Mass. at 451 ("a requirement of sufficient evidence to establish the identity of the accused and probable cause to arrest him is considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding"). See also *Commonwealth* v. *Levesque*, 436 Mass. at 452. Cf. *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 531-532 (1974) (difference between evidentiary

---

parse the defendant's statement too finely; this is a matter for a petit jury to consider in light of all the facts and circumstances presented by the evidence at trial. Cf. *Commonwealth* v. *Goldstein*, 54 Mass. App. Ct. 863, 867-868 (2002), quoting *Brunson* v. *Commonwealth*, 369 Mass. 106, 120 (1975) (reversing dismissal of defendants' indictments for armed robbery where grand jury evidence raised close question whether defendants' use of force occurred during robbery or after its completion: "The problem with the motion judge's analysis is that it depends upon a precise sequencing of events that is best reserved for a petit jury to sort out under proper instructions from the trial judge. In the last analysis, the grand jury is not the appropriate forum for reconciling subtle gradations of offenses . . . . It must be recognized that '[t]he grand jury is an investigatory and accusatory body only. It cannot and does not determine guilt' "). Nor do we consider as dispositive in any way on the question of intent the fact that when Chipman told the defendant to put down the gun after he made the statement about killing her, he did so. Again, the significance of the defendant's dropping the gun to the issue of his intent during the assault is one best left for a petit jury to weigh.

standard for preliminary hearing on complaint and probable cause standard applicable to indictments). In reviewing an indictment, there is no need to determine whether the evidence presented to the grand jury would be enough to warrant a petit jury in finding the defendant guilty. The evidence here was sufficient to warrant a reasonable person in believing that the defendant had committed the offense of armed assault with intent to murder, and the indictment should stand. See *Commonwealth* v. *Roman, supra* at 643.

3. *Conclusion.* The order dismissing the indictment charging the defendant with armed assault with intent to murder is reversed. We remand the case to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*