## Commonwealth *vs.* Khari Wilcox.

Suffolk. April 1, 2002. - May 20, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Grand Jury. Practice, Criminal,* Grand jury proceedings, Indictment.

This court declined to follow those States that have, either by statute, rule, or
court decision, adopted the requirement that grand jurors voting to indict
must have heard all the evidence presented [34-39], and concluded that
Massachusetts will follow those other State courts that have adopted the
Federal approach that grand jurors voting to return an indictment need not
hear all of the evidence presented against a defendant [38-39].

Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on December 12, 2001.

The case was reported by *Greaney,* J.

*Paul B. Linn,* Assistant District Attorney, for the
Commonwealth.

*Ziyad Hopkins,* Committee for Public Counsel Services (*Benjamin H. Keehn,* Committee for Public Counsel Services, with
him) for the defendant.

Greaney, J. After hearing six days of evidence during a three-
month period, a Suffolk County grand jury indicted the
defendant on charges of armed robbery and home invasion. The
defendant moved for discovery of the grand jury attendance
records to ascertain whether at least twelve of the grand jurors
who voted to indict him[1] had heard "all of the evidence"
presented against him. (Of particular concern to the defendant
was whether fewer than the required minimum of twelve grand
jurors voting to indict him had heard certain exculpatory
evidence, including evidence suggesting that he had been er-
roneously identified.) A judge in the Superior Court allowed the
defendant's motion, but stayed discovery to give the Com-

---

[1] "An indictment may be found only upon the concurrence of twelve or
more jurors." Mass. R. Crim. P. 5 (e), 378 Mass. 850 (1979).

monwealth an opportunity to seek interlocutory review of her order. The Commonwealth filed a petition under G. L. c. 211, § 3, in the county court seeking review of the judge's order. Recognizing that "the issue raised is of considerable importance and has state-wide impact on the proper administration of the criminal law," a single justice reserved and reported the case, without decision, to the full court. We conclude that grand jurors voting to return an indictment need not hear all of the evidence presented against a defendant. We remand the case to the county court for entry of an order vacating the discovery order.

1. "The grand jury as known to the common law always has been regarded as a bulwark of individual liberty and a fundamental protection against despotism and persecution." *WBZ-TV4* v. *District Attorney for the Suffolk Dist.*, 408 Mass. 595, 599-600 (1990), quoting *Lebowitch, petitioner*, 235 Mass. 357, 361 (1920). It is "an institution preserved" by our State Constitution, *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 531 (1974), which asserts "[t]he great principle . . . that no man shall be put to answer a criminal charge [for a capital or otherwise infamous offense] until the criminating evidence has been laid before a grand jury," *Commonwealth* v. *Holley*, 3 Gray 458, 459 (1855). See *Commonwealth* v. *Pezzano*, 387 Mass. 69, 70 n.3 (1982); Mass. R. Crim. P. 3 (b) (1), 378 Mass. 847 (1979) ("A defendant charged with an offense punishable by imprisonment in state prison shall have the right to be proceeded against by indictment except when the offense charged is within the concurrent jurisdiction of the District and Superior Courts and the District Court retains jurisdiction"). For an indictment to stand, "the grand jury must hear sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him" (citations omitted). *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982).

The defendant's discovery motion is predicated on the argument that the requirement in Mass. R. Crim. P. 5 (e), 378 Mass. 850 (1979), of a "concurrence" of at least twelve grand jurors to return an indictment, mandates that "a core of at least twelve grand jurors heard all of the evidence and voted to indict." He asserts that the word "concurrence" "presumes that a grand

juror has been present to hear all of the evidence presented before joining in a decision to indict," and, that such an obligation is necessitated by the grand jurors' oath, see G. L. c. 277, § 5. The defendant urges us to follow "[t]he better-reasoned decisions from other jurisdictions" that "recognize that an informed grand jury that truly concurs to indict, based on hearing all of the evidence, ensures the integrity of the grand jury process." We decline to add such a requirement to rule 5.

Rule 5 (e) has its origins in the common law. By the common law, a grand jury "may consist of not less than thirteen, nor more than twenty-three persons," *Crimm* v. *Commonwealth*, 119 Mass. 326, 331 (1876), and a concurrence of at least twelve was required to return an indictment, see *Commonwealth* v. *Smith*, 9 Mass. 107, 109 (1812). Both the maximum number of grand jurors and the minimum number required to indict prescribed by the common law was kept intact by statute and rule. See G. L. c. 277, §§ 1, 2A-2G (twenty-three grand jurors shall be selected to serve); Mass. R. Crim. P. 5 (a), 378 Mass. 850 (1979) ("the court shall select not more than twenty-three grand jurors to serve"); Mass. R. Crim. P. 5 (e) ("An indictment may be found only upon the concurrence of twelve or more jurors"). The common law quorum requirement of thirteen remains in place, unaltered by statute or rule. *Commonwealth* v. *Wood*, 2 Cush. 149, 150-151 (1848).

Rule 5 is modeled in large part on its Federal counterpart, Fed. R. Crim. P. 6. Reporters' Notes to Mass. R. Crim. P. 5, Mass. Ann. Laws, Rules of Criminal Procedure, at 46 (Lexis 1997). The Federal rule requires that every grand jury session be attended by "not less than 16 nor more than 23 members," Fed. R. Crim. P. 6 (a) (1), and, for an indictment to be found, requires "the concurrence of 12 or more jurors," Fed. R. Crim. P. 6 (f). Federal courts have nearly uniformly rejected the argument raised by the defendant that the grand jurors voting to indict be required to hear all of the evidence presented. See *United States* v. *Byron*, 994 F.2d 747, 748 (10th Cir. 1993); *United States* v. *Overmyer*, 899 F.2d 457, 465 (6th Cir.), cert. denied, 498 U.S. 939 (1990); *United States* v. *Godoy*, 678 F.2d 84, 86 (9th Cir. 1982), cert. denied, 464 U.S. 959 (1983); *United States ex rel. McCann* v. *Thompson*, 144 F.2d 604, 607 (2d

Cir.), cert. denied, 323 U.S. 790 (1944); *United States* v. *Raineri*, 521 F. Supp. 30, 35 (W.D. Wis. 1980); *United States* v. *Pastor*, 419 F. Supp. 1318, 1328-1329 (S.D.N.Y. 1975); *United States* v. *Anzelmo*, 319 F. Supp. 1106, 1115 (E.D. La. 1970). But see *United States* v. *Provenzano*, 688 F.2d 194, 202-203 (3d Cir.), cert. denied, 459 U.S. 1071 (1982) (expressing uneasiness with approach followed by other Federal courts and providing procedure whereby replacement and absentee grand jurors are given transcript of missed proceedings as well as an opportunity to recall witnesses for questioning). Often quoted and relied on in these Federal decisions is the reasoning stated by Judge Learned Hand, writing for the court in *United States ex rel. McCann* v. *Thompson, supra* at 607:

> "Since all the evidence adduced before a grand jury — certainly when the accused does not appear — is aimed at proving guilt, the absence of some jurors during some part of the hearings will ordinarily merely weaken the prosecution's case. If what the absentees actually hear is enough to satisfy them, there would seem to be no reason why they should not vote. Against this we can think of nothing except the possibility that some of the evidence adduced by the prosecution might conceivably turn out to be favorable to the accused; and that, if the absentees had heard it, they might have refused to vote a true bill. No one can be entirely sure that this can never occur; but it appears to us so remote a chance that it should be left to those instances in which it can be made to appear that the evidence not heard was of that character, in spite of the extreme difficulty of ever proving what was the evidence before a grand jury. Indeed, the possibility that not all who vote will hear all the evidence, is a reasonable inference from the fact that sixteen is a quorum. Were the law as the relator argues, it would practically mean that all jurors present at the beginning of any case, must remain to the end, for it will always be impossible to tell in advance whether twelve will eventually vote a true bill, and if they do, who those twelve will be. The result of such a doctrine would therefore be that in a long case, or in a case where there are intervals in the taking of evidence, the privilege of absence would not exist. That would certainly be an in-

> novation, for the contrary practice has, so far as we are
> aware, been universal; and it would be an onerous and un-
> necessary innovation."

We reject the defendant's contention that the reasoning stated
in the *Thompson* case is "unpersuasive." In most instances,
grand jurors hear only inculpatory evidence. *Commonwealth* v.
*O'Dell*, 392 Mass. 445, 447 (1984) (stating that prosecutors are
not required "to bring exculpatory evidence to the attention of
grand juries"). It is only when the prosecutor possesses exculpa-
tory evidence that would greatly undermine either the cred-
ibility of an important witness or evidence likely to affect the
grand jury's decision, or withholds exculpatory evidence caus-
ing the presentation to be "so seriously tainted," that the
prosecutor must present such evidence to the grand jury. *Id.*
See, e.g., *Commonwealth* v. *Vinnie*, 428 Mass. 161, 174 & n.18,
cert. denied, 525 U.S. 1007 (1998); *Commonwealth* v. *Roman*,
414 Mass. 642, 648-649 (1993). On the occasion when a grand
juror "misses" inculpatory evidence, such a circumstance, as
stated by Judge Hand, may work in the accused's favor if that
grand juror has not otherwise heard sufficient evidence to
establish the probable cause standard. See *United States ex rel.
McCann* v. *Thompson*, *supra* at 607. On the other hand, the
"missed" evidence may have been cumulative of other evidence
presented.

In the *Thompson* case, the existence of the quorum require-
ment served as a reasonable basis for inferring that not all of
the grand jurors voting on an indictment will necessarily have
heard all of the evidence. *Id.* This same inference may be drawn
from the common-law quorum requirement existing in the Com-
monwealth, as well as from the fact that grand jurors may be
replaced pursuant to statute, see G. L. c. 277, § 4. Provisions
governing grand jurors, which we decline to change, take into
account the lengthy terms for which many grand juries sit, usu-
ally a number of months. The provisions also, as acknowledged
by the defendant, "insure that the grand jury can continue
functioning despite absent members." See 1 S.S. Beale, Grand
Jury Law and Practice § 4:8, at 4-35 (2d ed. 2001) ("It is not
unusual for individual grand jurors to miss a number of the ses-
sions, yet to participate in the ultimate decision whether to

indict or not. In this respect, the grand jury process differs radically from the trial process, where it would be unthinkable for a juror to miss several days of evidence, yet be permitted to deliberate and vote on the defendant's guilt"). Adoption of the rule the defendant proposes may cause the prosecution to seek to indict an accused on the basis of whatever evidence it can present in one day. In such circumstances, the prosecution may not be able to present the direct testimony of several witnesses, relying instead on the hearsay statements of one witness. While proceedings conducted in this manner would not be impermissible, see *Commonwealth* v. *O'Dell, supra* at 450-451 ("an indictment may be based solely on hearsay"), they would run contrary to our "preference for the use of direct testimony before grand juries," *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 656 (1979), which inures to the accused's benefit. The defendant's rule would also be disruptive of witnesses, police and their schedules, court sessions, and the daily encumbered lives of grand jurors and their families.

Although the defendant correctly identifies that other States, either by statute, rule, or decision, have adopted the requirement that the grand jurors voting to indict have heard all the evidence presented, see, e.g., Ariz. Rev. Stat. Ann. § 21-406(B) (West 2002); Me. R. Crim. P. 6(j) (West 2001); N.D. Cent. Code § 29-10.1-20 (1991); Or. Rev. Stat. § 132.360 (2001); *Commonwealth* v. *Levinson*, 480 Pa. 273, 285-286 (1978) (explaining "[w]hen a substantial percentage of the total membership of the jury is absent from a significant portion of the presentation of evidence, it can no longer be said with confidence that the deliberations were not affected"),[2] some State courts have followed the Federal approach. See, e.g., *People* v. *Martin-Trigona,*

---

[2]Some decisions to which the defendant cites permit the absence of voting grand jurors so long as they otherwise become informed of the evidence they missed, see *State* v. *Del Fino*, 100 N.J. 154, 164 (1985) (stating future rule that "there is no reason that grand jurors not be informed of all evidence before the panel," and that "court should charge the jurors that those who join in the indictment must have been present and have heard or otherwise have informed themselves [by reading transcripts of missed proceedings] of the evidence presented at each session"), or permit them to vote so long as they have not missed either a substantial portion of the prosecution's case, or essential and critical evidence, see *State* v. *Reynolds*, 166 N.J. Super. 570, 575 (1979) (dismissing indictment, concluding that grand jury cannot faithfully

111 Ill. App. 3d 718, 724 (1982); *State* v. *Blyth*, 226 N.W.2d 250, 266 (Iowa 1975); *Johnston* v. *State*, 107 Nev. 944, 947 (1991). We join this latter group of courts. We add that it is precisely the unique and limited function of the grand jury that permits their proceedings, including those rules pertaining to grand jurors, to vary from the rules governing trials and petit jurors. See *Commonwealth* v. *McLeod*, 394 Mass. 727, 733, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985); *United States* v. *Leverage Funding Sys., Inc.*, 637 F.2d 645, 648 (9th Cir. 1980), cert. denied, 452 U.S. 961 (1981). See also *Brunson* v. *Commonwealth*, 369 Mass. 106, 120 (1975) (explaining that grand jury "is an investigatory and accusatory body only. It cannot and does not determine guilt"). That these rules vary does not vitiate the defendant's constitutional right to be indicted by a grand jury, of which at least twelve grand jurors agree that probable cause exists to indict. As has been explained, the grand jury are expected to follow their oath faithfully, as they may not return an indictment unless they have heard "sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him" (citations omitted). *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982).

2. The case is remanded to the county court for entry of an order vacating the order of the Superior Court judge allowing the defendant's motion for discovery of the grand jury attendance records, and directing the entry of an order denying the motion.

*So ordered.*

---

perform their function "where the required minimum number of grand jurors voting the indictment is composed of individuals absent during substantial portions of the presentation of the State's case"). See also *People* v. *Saperstein*, 2 N.Y.2d 210, 218, cert. denied, 353 U.S. 946 (1957), quoting *People* v. *Brinkman*, 309 N.Y. 974, 975 (1956) (affirming rule that "an indictment is good despite the absence of certain grand jurors on various days when testimony is heard, so long as 'at least twelve of the Grand Jurors, who voted to indict, heard all essential and critical evidence' "). Our conclusion assumes that the grand jurors voting to indict follow the instructions given by the judge who advised them of their obligations, and that they act conscientiously in compliance with their oath.