COMMONWEALTH *vs.* JOHN S. BIASIUCCI.

No. 02-P-1092.

Plymouth. November 13, 2003. - April 1, 2004.

Present: BECK, KAPLAN, & PORADA, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Indictment, Grand
jury proceedings, Assistance of counsel. *Grand Jury. Evidence,* Grand jury
proceedings. *Constitutional Law,* Waiver of constitutional rights. *Waiver.*

A trial court judge did not err in denying a criminal defendant's motion to
    dismiss the indictments against him based on the prosecutor's alleged
    failure to disclose certain allegedly exculpatory evidence to the grand jury,
    where the evidence was not weighty enough to constitute a substantial
    challenge to the demonstration of probable cause and, if laid before the
    grand jury, would almost certainly have left unaltered the disposition to
    indict. [736-739]
A criminal defendant who, during questioning by police, made no gesture
    indicating that he was invoking his previously-waived right to remain
    silent or to consult counsel had no basis for arguing that his trial counsel
    provided ineffective assistance by failing to object to police testimony
    regarding statements made by the defendant during questioning. [739-740]

INDICTMENTS found and returned in the Superior Court Depart-
ment on July 24, 2000.

A motion to dismiss was heard by *Carol S. Ball,* J., and the
case was heard by *Richard J. Chin,* J.

*David B. Mark* for the defendant.

*Gail M. McKenna,* Assistant District Attorney, for the
Commonwealth.

KAPLAN, J. Upon jury-waived trial, the defendant John Biasi-
ucci was convicted of the crimes of rape of a child (G. L. c. 265,
§ 23) and indecent assault and battery on a person aged fourteen
years or over (G. L. c. 265, § 13H), committed on June 14,
2000. The defendant appeals from the judgments of conviction,
contending, first, the judge erred in denying the defendant's
pretrial motion to dismiss the indictments for the prosecutor's

alleged failure to disclose certain exculpatory information; second, defense counsel provided ineffective assistance at the trial by his failure to object to testimony received in alleged violation of the Miranda rule. We shall affirm the judgments.

### *Grand Jury: Exculpatory Evidence*

1. The prosecution tendered one witness to the grand jury, Officer Robert Rossborough of the Plymouth police. Under questioning, Rossborough, relying largely on his incident report, testified in substance as follows. Late on June 14, 2000, the mother of Jennifer Davis[1] telephoned the police station and in consequence Rossborough went to the Davises'[2] house. The mother said she had overheard a telephone conversation in which Jennifer mentioned what had happened that night at the picnic ground on the pond off Bartlett Road, Plymouth. Haled before both parents, Jennifer said a man (the defendant) had touched her in an inappropriate way, fondling her breasts and touching her vaginal area. Rossborough took notes of the mother's account of Jennifer's statement and said he would enlist a detective who would follow the case. On getting back to the police station, Rossborough had a further call from the mother; she said the matter was more serious, Jennifer had spoken further about having been raped digitally.

Rossborough, now accompanied by Sergeant Almeida, returned to the Davises and interviewed Jennifer (aged fourteen). Jennifer said she, Matthew (aged fourteen), and his sister Malina (aged sixteen) were at the picnic ground, arriving, it seems, at 9 or 9:30 P.M. Michael (aged fifteen) was also there. Apparently drunk (or in process of drinking), Michael, cavorting about, took off his clothes and masturbated in the open; he grabbed Jennifer's hand and tried to have her touch him, but she refused. As Michael was resuming his pants, the defendant (aged 24), Michael's stepbrother, joined the group. He scolded Michael. He put his arms around the two girls and hugged them. Very soon the defendant took Jennifer aside. Continuing to embrace and hug her, he proceeded to invade her shirt and pants. He fondled her breasts and put his hand between her legs and finally

---

[1]A pseudonym.
[2]See note 1, *supra.*

pushed his fingers into her vagina. Within minutes of the rape, Jennifer's father (ignorant of the incident) called for her and they went home.

Concluding the interview with Jennifer, Rossborough and Almeida made their way to Michael's home. The defendant, fitting the name John and description given by Jennifer, was present (he did not live there but was visiting). After some conversation, Rossborough told the defendant he was there to investigate a rape and indecent assault and battery. Satisfied now about the identity of this man as the actor at the pond, Rossborough placed him under arrest for the stated crimes. The defendant, possibly responding to the meaning he put on the word "rape," said he was only at the picnic ground for five minutes and "couldn't have done her." After Miranda warnings, which he said he understood, the defendant said he was there maybe twenty minutes at most with the purpose of retrieving his brother Mike, who was the "asshole" of the occasion. He told Rossborough, "I wasn't there long enough to fuck [her]." He said of himself that he was a nice guy but a third-degree black belt in karate who could give the officer trouble if he wanted to. He started to struggle as Rossborough handcuffed him and placed him in the police car. In fact he slipped out of a handcuff and had to be taken out of the car, rehandcuffed and put back in the car. On the way to the station, the defendant said again he was there but five minutes and knew the "little blonde" (Jennifer) had to get home, and she left right after he got there.

After booking at the station and second Miranda warnings, the defendant, asked several times[3] whether he had touched either girl, didn't say yes or no, just that he was there five minutes, tops. He ended by saying, "The little blonde jumped on my back like a piggyback ride, and that's all that happened."

2. Rossborough's testimony as recounted above surely supplied the standard elements of an adequate presentation to a grand jury as understood in this Commonwealth—evidence identifying the accused and furnishing probable cause to believe that he or she had committed the crime to be charged. See

___

[3] The incident report puts it at three times.

*Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). The defendant contends, however, that the Commonwealth—more particularly the prosecutor in charge—withheld from the grand jury statements by Malina and Matthew (or related information) which, if presented, might have led the grand jury to decline to indict.

This exculpatory material if it existed could be found of record only in such parts of Rossborough's incident report as he had not in effect reproduced in his grand jury testimony; or in a report by Detective Wayne Neal, of the Plymouth police, of his interviews with Malina and Matthew on June 15; or in an affidavit dated November 4, 2000, by the prosecutor of his interviews with Malina and Matthew on July 21, 2000.

Rossborough wrote in his incident report that Jennifer told him Matthew and Malina had seen Michael masturbating.

Detective Neal reported that Malina told him there was no drinking or anything inappropriate at the pond (specifically, no masturbation for exposure to herself or Jennifer); in fact it was "dark" at the time. Matthew said Michael had not masturbated; he was naked but used his hand to shield his penis from sight.

The prosecutor recorded Malina's admission to him on July 21 that she had had a "physical encounter" with the defendant at the pond to which she consented until she terminated it.[4] Matthew said he hadn't seen anything happening between the defendant and his sister Malina. The prosecutor said Matthew recanted parts of what he told Detective Neal about Michael's behavior.

3. All the defense could derive from the foregoing material, available to the prosecution but not presented to the grand jury, was protestations by Matthew and Malina that they had not seen evil—masturbation in public or misbehavior toward Jennifer—a negative observation which might serve to some degree of probability as proof that evil had not in fact occurred. The probability was subject to a discount because of a reasoned suspicion that the youthful speakers were shading the truth out of motives of self-protection or of reluctance to incriminate others.

[4]Jennifer had mentioned to Rossborough that after finishing with her, the defendant went off with Malina to a near location.

In any view of the case, nothing appears that could justify dismissal of an indictment. The judge refers to the leading case, *Commonwealth* v. *O'Dell*, 392 Mass. 445 (1984). The court says in *O'Dell* there is no requirement that a prosecutor present all available exculpatory evidence to the grand jury, *id.* at 447[5]; rather the court emphasizes a distinct duty not to compromise the integrity of the institution, as happened in *O'Dell* by the prosecutor's presenting the incriminating part of a police report but withholding adjacent exculpatory parts, rendering the submission to the grand jury quite misleading. *Id.* at 446-449. There is no such ethical lapse in the present case.[6] Our decision to uphold the indictment can rest on the simple ground that such exculpatory evidence as may be conceived to have existed was not weighty enough to constitute a substantial challenge to the demonstration of probable cause, and, if laid before the grand jury, would almost certainly have left unaltered the disposition to indict.[7] Otherwise stated, it is when the prosecutor possesses information that would gravely undermine evidence supporting probable cause that the prosecutor is duty bound to furnish it to the grand jury. See *Commonwealth* v. *LaVelle*, 414 Mass. 146, 150 (1993), citing *Commonwealth* v. *Connor*, 392 Mass. 838, 854 (1984), and *Commonwealth* v. *McGahee*, 393 Mass 743, 746 (1985).[8]

We add that it tends against dismissing an indictment, after

---

[5]To be distinguished is the question of the prosecutor's duty to divulge such evidence to the defense for purposes of use in connection with trial.

[6]The prosecutor in the instant case may have seen a rather distant analogy to *O'Dell* when he decided, as he said, not to offer Malina as a grand jury witness, assuming she would then have to complete her story by describing her tryst with the defendant at the pond, which, however, could excite undue prejudice against the defendant. (At trial the prosecutor offered the evidence of the tryst to show a pattern of misbehavior on the defendant's part toward young females, but the judge chose not to receive it.)

[7]On "weight," the prosecutor's considered belief that a witness was not telling the truth—as was the present prosecutor's judgment about Matthew—could count as a factor against calling him.

[8]*Commonwealth* v. *Wilcox*, 437 Mass. 33, 37 (2002), sums up thus: "It is only when the prosecutor possesses exculpatory evidence that would greatly undermine either the credibility of an important witness or evidence likely to affect the grand jury's decision, or withholds exculpatory evidence causing the presentation to be 'so seriously tainted' that the prosecutor must present such evidence to the grand jury."

trial on the merits has taken place,[9] that the trial (whether with or without a jury) resulted in a conviction in the face of the introduction in evidence of material previously withheld. Such was the case here, as the Commonwealth called Matthew and Malina as trial witnesses and they were examined and cross-examined. See *Commonwealth* v. *LaVelle*, 414 Mass. at 151 n.2; *Commonwealth* v. *Daye*, 435 Mass. 463, 468 n.2 (2001); *Commonwealth* v. *Dyous*, 436 Mass. 719, 723-724 (2002). (This line of analysis should not be pushed too far, lest subsequent conviction seal the indictment from attack even in singular meritorious cases warranting dismissal.)

The conclusion on the whole must be there is no tenable basis for dismissing the present indictments and thereby overturning the convictions.

### Assertion of Miranda Right

Officer Rossborough testified at trial, as in his grand jury testimony, that after second Miranda warnings, and waiving silence by agreeing to talk, the defendant did not say yes or no to the question had he touched the girls, but "he kept making reference back to he was only there between five and twenty minutes." Defense counsel did not object to this testimony. Counsel is now charged with ineffective assistance for failing to recognize that the defendant's answers to repeated questions (see note 3, *supra*) were the equivalent of an assertion by him of his right to remain silent or to consult his counsel. This is a fruitless attempt to transform evasive answers into some claim of right. True, "a defendant has not only the right to remain silent from the beginning but also a continuing right to cut off, at any time, any questioning that does take place," *Commonwealth* v. *Senior*, 433 Mass. 453, 463 (2001), but "[i]n order to invoke that continuing right, a defendant must 'indicat[e] in [some] manner' that he is invoking the right he

---

[9]The defense herein, after pretrial denial of the motion to dismiss the indictment, applied for relief to the single justice of the Supreme Judicial Court. The single justice denied the application after hearing, holding that the denial of a motion to dismiss may not be appealed until after trial, and relief is not available under G. L. c. 211, § 3 (citing *Ventresco* v. *Commonwealth*, 409 Mass. 82, 83-84 [1991], and *Epps* v. *Commonwealth*, 419 Mass. 97, 99 [1994]).

previously waived," which "may be accomplished by 'either an expressed unwillingness to continue or an affirmative request for an attorney.' " *Commonwealth* v. *Hussey (No. 1)*, 410 Mass. 664, 671, cert. denied, 502 U.S. 988 (1991), quoting from *Miranda* v. *Arizona*, 384 U.S. 430, 473-474 (1966), and *Commonwealth* v. *Pennellatore*, 392 Mass. 382, 387 (1984), respectively. See *Commonwealth* v. *Senior*, 433 Mass. at 463. As the defendant herein made no such gesture, there was no ground for an objection to Rossborough's testimony, and thus no basis for a complaint against counsel for failing to object.

*Judgments affirmed.*