COMMONWEALTH vs. JAMES F. WERMERS.

No. 03-P-563.

Suffolk. January 14, 2004. - May 13, 2004.

Present: PERRETTA, KAPLAN, & SMITH, JJ.

*Robbery. Grand Jury. Practice, Criminal,* Grand jury proceedings, Conduct of
   prosecutor, Indictment, Dismissal, Appeal by Commonwealth, Interlocu-
   tory appeal.

This court concluded that under Mass.R.Crim.P. 15(a)(1), as amended, 422
   Mass. 1501 (1996), the Commonwealth had the right to appeal the
   dismissal of an indictment without prejudice. [185-186]
In a criminal action, the judge erred in dismissing without prejudice an indict-
   ment for armed robbery on the ground that there had been a material fault
   in the prosecutor's presentation of evidence to the grand jury, where there
   was no extrinsic evidence that pointed directly to malice prepense on the
   part of the prosecutor in failing to present to the grand jury a police book-
   ing form that arguably would have tended to show the victim's testimony
   to be false in one respect; where it was highly unlikely that the disclosure
   of the booking form would have affected the grand jury's decision to
   indict, given the other evidence presented; and where it would be quite
   hard to sustain on the record an imputation of motive on the part of the
   prosecutor to procure an indictment by improper means. [186-188]

INDICTMENT found and returned in the Superior Court Depart-
ment on February 14, 2002.

A motion to dismiss was heard by *Peter M. Lauriat,* J.

*Christina E. Miller,* Assistant District Attorney (*Mark A. Hal-
lal,* Assistant District Attorney, with her) for the Commonwealth.

*Eduardo A. Masferrer* for the defendant.

KAPLAN, J. On the ground that there had been a material fault
in the prosecutor's presentation of evidence to the grand jury, a
judge of the Superior Court dismissed without prejudice an
indictment for armed robbery. The Commonwealth appeals from
the order of dismissal.

*Grand jury testimony.* About 2:30 P.M., September 17, 2001,

Shamta Patel and Anthony Chen were at work behind the pharmacy counter at a CVS store on Morrissey Boulevard, in the Dorchester section of Boston. A man appeared at the counter and handed Patel a note, which she in turn handed to Chen. Chen read (paraphrased): "I have a gun. Put all your Oxycontin in a bag, you have thirty seconds to do this or I can shoot. Put this note in the bag, too." Chen opened the safe, took up some 600 Oxycontin tablets and put them into a brown paper CVS bag together with the note, and passed the bag to the waiting man. The man walked about ten feet toward the exit, then broke out into a run. According to Chen's observation, the man had had his hand in his jeans pocket. He had a tattoo on each forearm. He wore a gray T-shirt. Chen figured the man was 5'4" or 5'5" tall because his head was level with Chen's eyes.

Chen was working at the same CVS store on December 5, 2001. From behind the counter Chen saw a man approaching whom he recognized at once as the perpetrator of September 17, this time wearing a green sweatshirt, sunglasses, and a baseball cap. Chen bluffed, telling the man he needed to make a telephone call; he went to the phone and pretended to make the call. At this point, the man turned and started toward the exit. Chen alerted Paul Sweeney, a manager who was present, and told another worker to call the police. Sweeney got to the fleeing man but the man shook Sweeney off and exited the place, with Sweeney in pursuit. Sweeney caught up to the man to the point of grabbing his shoulder. The man drew out a black weapon and pointed it at Sweeney's head. The man ran off. Sweeney returned to the store.

Police arrived at once. Sweeney told Officers Steven Charbonnier and Christopher Ross of the Boston police, who had responded to the report of a man with a gun, that the man involved was 5'7" or up to 5'10" tall and was wearing a blue sweatshirt, sunglasses, blue jeans, and a blue baseball cap. The officers invited Sweeney into the back seat of their cruiser and drove about the nearby streets in hopes of finding the man.

At the same time, other officers were looking for the man on the basis of Sweeney's description. Officer Lee Chau noticed a white vehicle located across the street from the CVS, with its door open, no person inside, keys in the ignition, the hood

warm, blue sweatshirt and blue baseball hat lying on a seat. Unmarked police units that waited in the vicinity finally saw a man trying to enter the vehicle. He was apprehended and taken to the CVS store for possible immediate identification. There Chen identified the man as the robber of the September 17 incident and the fleeing customer of that day, December 5. Sweeney identified the man as the one who put the gun to him. The man was James Wermers (the defendant herein).

Under arrest, Wermers was brought to the police station and booked. Waiving Miranda rights, he led the police to the hiding place of his pellet handgun and the police recovered it. Wermers, however, denied any knowledge of the events of September 17.

On the day following the arrest, Detective Richard Atwood, who was assigned to all Oxycontin robberies in Dorchester and had been informed of Wermers's involvement, displayed to Chen a photographic array of nine men. From the array, Chen made a positive identification of one as picturing the actor of the two dates; the photograph was that of Wermers.

After Chen, in the course of his testimony,[1] told the grand jury that on September 17 he had seen tattoos on the man's forearms, he was asked whether he had made a similar observation on December 5 when the man came into the store. Chen said he had not; the man was then wearing a long-sleeved sweatshirt. When later that day the man left the cruiser to be viewed by Sweeney and Chen, he was not wearing a sweatshirt, rather he showed a short-sleeved T-shirt. Chen said, however, that he had viewed the man at a distance, as he did not want to encounter him face to face.

The grand jury, having met and heard testimony on January 22 and February 14, 2002, on the latter date brought in indictments of Wermers for armed robbery (incident of September 17, 2001) and assault with a dangerous weapon (December 5, 2001). On the day of the indictments, the Commonwealth tendered to the defense the first certificate of discovery. Thereby the defense received the "Arrest Booking Form" for Wermers together with

---

[1]The others who testified were Sweeney, Officer Charbonnier, and Detective Atwood.

police incident reports. On the booking form Wermers's height is given as 5'8"; clothing: gray T-shirt, blue jeans, white Nike sneakers, and gray Bruins hat. Following the caption "Scars/Marks/Tattoos," we read the booking officer's entry "Tattoos/Symbols/Upper Left Arm."

On November 8, 2002, the defense filed a motion to dismiss the armed robbery indictment with prejudice on the ground of an alleged "impairment" of the grand jury proceedings by reason of "improper prosecutorial conduct resulting in the indictment of the defendant," citing *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984). The impairment came about, according to the defendant's claim, by reason of the prosecution's failure to disclose to the grand jury the booking form with the notation about tattoos.

After a short hearing on February 13, 2003, and submission of briefs, a judge of the Superior Court on February 20, 2003, allowed the motion to dismiss the armed robbery indictment, the dismissal to be without prejudice. The Commonwealth's motion to reconsider was denied, and the Commonwealth appeals to this court under Mass.R.Crim.P. 15(a)(1), as amended, 422 Mass. 1501 (1996) (text in margin[2]).

*Appealability.* The defendant contends, first, that the Commonwealth has no right of appeal from the without-prejudice dismissal of an indictment; the defendant would confine the rule 15(a)(1) appeal to dismissals with prejudice, where the criminal prosecution is at an end except as saved by a successful appeal. There is no basis in the words or theme of the rule for such a restriction, and the Commonwealth points out there are plenty of decided cases in which appeals have been enter-

---

[2]"(a) RIGHT OF INTERLOCUTORY APPEAL.

"(1) Right of Appeal Where Pretrial Motion to Dismiss or for Appropriate Relief Granted. The Commonwealth shall have the right to appeal to the appropriate appellate court a decision by a judge granting a motion to dismiss a complaint or indictment or a motion for appropriate relief made pursuant to the provisions of subdivision (c) of Rule 13."

tained from nonfinal dismissals.[3] Respect for the prosecutor in his executive function counts against pressing him to reindict (and suppose there is no conscientious way of correcting the defect supposed to justify the dismissal?) and eliminating his choice of a prompt test of the validity of the indictment by means of the interlocutory appeal.

*Merits.* The judge ruled there was in the presentation to the grand jury an impairment of the integrity of the proceeding that called for dismissal of the challenged indictment (although not foreclosing reindictment). The judge relied on *Commonwealth v. Salman*, 387 Mass. 160 (1982); *Commonwealth v. O'Dell*, 392 Mass. 445 (1984); and *Commonwealth v. Mayfield*, 398 Mass. 615 (1986).

In *Salman*, 387 Mass. at 166, 168, thirty-seven indictments were dismissed, allowing reindictment on other evidence, where police testimony was (questionably) false and (questionably) given with knowledge of falsity and the Commonwealth could not furnish additional information required by the judge. In *O'Dell*, 392 Mass. at 448-449, an indictment was ordered dismissed without prejudice where the prosecution offered police testimony about an inculpatory statement by the accused suggesting his guilt, but knowingly withheld an exculpatory portion of the same statement, thus distorting it. In *Mayfield*, 398 Mass. at 624-626, a murder case, a police officer gave false testimony that he had found in the area of the victim's body a cigarette lighter from a gym bag that had been stolen by the accused, when in fact the lighter was found by another officer farther from the body; dismissal was not warranted, as the false testimony was not given recklessly or intentionally and was not likely to have influenced the grand jury's decision to indict.

These cases offer nice questions and answers about alleged ethical lapses in the presentation of evidence to a grand jury and it is perhaps already evident on the face of things that the present case does not come near deserving dismissal. This is verified when we examine the record by reference to the three-part standard set out in the *Mayfield* case, 398 Mass. at 621:

---

[3]See, e.g., *Commonwealth v. Salman*, 387 Mass. 160, 161, 168 (1982); *Commonwealth v. Ira I.*, 439 Mass. 805, 806 (2003).

"To sustain a claim that the integrity of the grand jury proceeding has been impaired, not only must the evidence have been given with knowledge that it was false or deceptive, but the false or deceptive evidence must probably have been significant in the view of the grand jury and must have been presented with the intention of obtaining an indictment."

The defendant's contention in this case is not that the Commonwealth presented evidence with knowledge it was false or deceptive, but rather that it knowingly withheld evidence (the booking form) that would tend to show the victim's testimony (about the tattoos) to be false. The contention falters. Chen's testimony is plausible, complete, and without any inner inconsistencies. The booking in its staccato or telegraphic style does not contradict Chen's testimony, for it refers to "tattoos" in the plural, and the reference to "upper left arm" may well relate to the unspecified "symbols," rather than the tattoos. If the words on the form are susceptible of a different reading that puts the tattoos on the upper left arm, rather than on the forearms as mentioned by Chen, the discrepancy seems the stuff of ultimate cross-examination, not a ground for dismissing an indictment.[4] As to the "knowledge" point of the *Mayfield* formulation, there is no extrinsic material that points directly to malice prepense on the part of the prosecutor, and any inference in that respect must be circumstantially weak.

It is highly unlikely that disclosure of the booking form would have affected the grand jury's decision to indict. It is perhaps enough to note that Chen identified the defendant as the September 17 culprit on three occasions without reliance on tattoos: in the store on December 5, at the show-up the same day, and during the photographic display session the following day. An omission to offer the booking form does not seem important in weighing the congeries of factors with a bearing on probable cause.[5]

The third clause of *Mayfield* may conceivably add as a

[4]The Commonwealth suggests that in the interval between September 17 and December 5, impermanent tattoo-like marks might readily have been erased and replaced elsewhere.

[5]Compare *Commonwealth* v. *McGahee*, 393 Mass. 743, 745-748 (1985), where the grand jury heard testimony that a witness had made a photographic

requirement to justify dismissal, that the prosecutor shall be shown to have had a set purpose to procure an indictment by improper means. Such an imputation of motive, if a condition of dismissal, would be quite hard to sustain on this record.

*Conclusion.* Thus we conclude that any claim of an ethical lapse on the part of the prosecution is without material support. For the rest, there is no doubt the record herein "supplied the standard elements of an adequate presentation to a grand jury as understood in this Commonwealth — evidence identifying the accused and furnishing probable cause to believe that he or she committed the crime to be charged." *Commonwealth* v. *Biasiucci*, 60 Mass. App. Ct. 734, 736-737 (2004), citing *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982).[6] If the booking form is taken as having some exculpatory value, then we need recall that "it is when the prosecution possesses information that would gravely undermine evidence supporting probable cause that the prosecutor is duty bound to furnish it to the grand jury," *Commonwealth* v. *Biasiucci, supra* at 738, citing cases, and such was not the situation here, as already indicated.

The order dismissing the indictment for armed robbery is reversed.

*So ordered.*

---

identification of the accused but were not told that the witness has failed to identify the accused at a later probable cause hearing: the court held the omission did not impugn the indictment to require its dismissal.

[6]See *Commonwealth* v. *O'Dell*, 392 Mass. at 450-452 & n.2, about the adoption of the *McCarthy* standard.