A grand jury indicted the defendant for murder, unlawful possession of a firearm, and unlawful possession of ammunition. The indictments further charged that the defendant committed the possessory offenses after having been convicted of a prior violent crime, subjecting him to enhanced penalties under the Massachusetts Armed Career Criminal Act (ACCA), G. L. c. 269, § 10G. A jury acquitted the defendant of murder but convicted him of the possessory offenses. After a second trial before another jury, the defendant was convicted on the ACCA charges, based on a prior conviction of assault and battery by means of a dangerous weapon (ABDW). On appeal, the defendant makes five arguments: (1) an improper jury instruction led to his conviction of a crime not charged in the indictments, (2) his motion to dismiss due to impairment of the integrity of the grand jury proceedings was erroneously denied, (3) trial counsel rendered ineffective assistance, (4) there was insufficient evidence that he possessed ammunition, and (5) his case should be remanded for specific findings on his motion to dismiss for failure to grant a speedy trial pursuant to Mass. R. Crim. P. 36, 378 Mass. 909 (1979). We affirm.
Background. The jury could have found the following facts. In the early morning of July 29, 2006, Jonathon Monroy drove a Toyota sedan onto Southgate Street in Worcester; his passengers were the defendant, Francisco "Cisco" Rivas, and Heidi O'Brien.[2] The victim, Luis Arocho-Ortiz, was standing on the street that evening with Francisco "Tito" Rivera. The defendant had had a previous violent encounter with Rivera and had expressed an intent to kill him. As the Toyota proceeded down Southgate Street, Monroy and O'Brien heard gunshots and then saw the defendant pull his arm, holding a gun, back inside the vehicle through its back passenger window. The defendant then said, "I know I clapped one of them niggers." Arocho-Ortiz was hit by one of the bullets and died from his injuries.
Monroy then drove to the defendant's sister's house, where the defendant wiped down and disposed of the gun. The day after the shooting, the downstairs tenant in the house where the defendant's sister lived found the gun in a recycling bin in the rear of the house. The gun was later ballistically linked to shell casings found at the shooting scene.
Discussion. 1. Jury instruction. The defendant argues that the jury received an improper limiting instruction that allowed them to convict him for actions he allegedly committed on a date other than the July 29 date stated in the indictments. Because the defendant did not object to the instruction, we ask whether any error resulted in a substantial risk of a miscarriage of justice. See Commonwealth v. Freeman, 352 Mass. 556, 564 (1967).
The issue arose because a witness was expected to testify that on July 22, he had seen the defendant attempt to shoot Tito Rivera. The judge initially instructed the jury that they could consider the testimony only on the limited issue of the defendant's motive to commit the charged offenses. The witness then testified that he had seen the defendant with a gun in the three weeks prior to July 29. After a sidebar discussion revealing that the witness was expected to identify the gun linked to the July 29 shooting as the gun he saw the defendant possess, the judge determined that such testimony went beyond motive and could be viewed as substantive evidence of the defendant's possession of the gun on July 29. The judge therefore instructed the jury that they could consider the witness's testimony about "an event that allegedly occurred on July 22[ ] only as to any proof of motive that the defendant may or may not have had," but that the "other things that [the witness] testifies to are not so limited, and you can use them for whatever weight you feel they are appropriate to receive in the course of your overall determination of whether the Commonwealth has met its burden of proving beyond a reasonable doubt that the defendant is guilty of the crimes." The witness was then shown the gun linked to the July 29 shooting and he identified it as the same gun that he had previously seen in the defendant's possession.
On appeal, the defendant argues that this instruction erroneously left the jury free to convict him based not on any possession on July 29, as specified in the indictments, but instead based on his possession of a gun in the three weeks prior to July 29 -- conduct for which he had not been indicted.[3] After considering the instructions as a whole in evaluating "the interpretation a reasonable juror would place on the judge's words" (quotation omitted), Commonwealth v. Belcher, 446 Mass. 693, 696 (2006), and mindful that the jury are presumed to have followed those instructions, see Commonwealth v. Gonzalez, 465 Mass. 672, 681 (2013), we disagree.
Because the judge told the jury that they could consider the testimony in deciding whether "the defendant is guilty of the crimes," the question is what the jury would have understood by the phrase "the crimes." It is therefore relevant that the judge instructed the jury, during the testimony of this same witness, that the defendant "is not charged with committing any crime other than the charges contained in the indictments"; that the indictments specifying the date of the crimes as July 29 had been read to the jury at the beginning of trial; and that, during the next witness's testimony, the judge told the jury, "just to remind you, the defendant is not charged with having committed any other crime beyond that which he is charged with on July 29th." We see no error in the judge's instructions.
Moreover, eyewitness testimony and ballistic evidence showed that the defendant possessed a gun and ammunition on July 29. And the parties' closing arguments focused on the events of the early morning of July 29 (and the late evening of July 28); they did not mention the evidence that the defendant had been seen with a gun in the three preceding weeks. Accordingly, even if there was any error in the judge's limiting instruction,[4] we see "no substantial risk that [it] may have materially influenced the verdict[s] in this case, and therefore no substantial risk of a miscarriage of justice." Commonwealth v. Shea, 467 Mass. 788, 797 (2014).
2. Integrity of grand jury proceedings. The defendant next argues that the motion judge erred in denying his motion to dismiss the indictments due to impairment of the integrity of the grand jury proceedings, and in denying reconsideration of that action. The motion to dismiss asserted that numerous items of exculpatory evidence should have been presented to the grand jury. The motion judge ruled that most of the omissions involved details that, while possibly creating fodder for impeachment at trial, were not essential to the integrity of the grand jury proceedings. The judge ruled that a few of the omissions raised more substantial issues but that, while the better course would have been to present them to the grand jury, the failure to do so likewise did not impair the integrity of the proceedings. We agree.
There is no duty to present all exculpatory evidence to a grand jury. Commonwealth v. McGahee, 393 Mass. 743, 746 (1985). A prosecutor "must present exculpatory evidence 'that would greatly undermine either the credibility of an important witness or evidence likely to affect the grand jury's decision,' as well as evidence the withholding of which would cause the presentation to be seriously tainted." Commonwealth v. Clemmey, 447 Mass. 121, 130 (2006), quoting Commonwealth v. Wilcox, 437 Mass. 33, 37 (2002). It is insufficient to show that the withheld evidence might have altered the grand jury's determination; the defendant must make a stronger showing, that its absence "likely ... affected the grand jury's decision to indict." Clemmey, 447 Mass. at 131.
We note at the outset a problematic gap in the defendant's argument on appeal: many of the asserted exculpatory items of evidence he relies upon do not appear in the record before us. Instead, as to those items, the record contains only trial counsel's assertions (in legal memoranda) that particular witnesses made particular statements, unsupported by any interview transcripts or other record of the context in which the asserted statements were made. Without that context, we cannot evaluate what effect those statements would likely have had if presented to the grand jury -- whether they would have been viewed as credible (or inherently implausible) standing alone, and whether they would have "greatly undermine[d]" the credibility of other important evidence before the grand jury (quotation omitted). Id. at 130. Nor can we conclude that their omission "seriously tainted" the presentation. Id. The burden is on the defendant to show that the integrity of the proceedings was impaired. See id. On this record, he has not met that burden.
Among the omissions that the motion judge viewed as less significant were a detail of a statement concerning another possible shooter,[5] claimed inconsistencies between witness statements regarding the gun,[6] and the fact that the defendant's fingerprints were not found on the gun.[7] We agree that these omissions did not meet the Clemmey standards for evidence that the grand jury must hear.[8] See id.
The judge viewed four particular omissions as raising more substantial issues. First, Monroy and O'Brien were each interviewed three times and, in their first two interviews, they denied the defendant's involvement. The grand jury were told only of their third interviews, in which they implicated the defendant. But the judge ruled that their prior inconsistent interviews would not have "greatly undermine[d]" their credibility with the grand jury, because both witnesses were closely involved with the defendant and the incident, and their prior denials could be viewed as attempts to protect their friend. Although the omissions are troubling, the defendant has not included either witness's first two statements in the record before us. We therefore are not persuaded that those statements would likely have seriously undermined the witnesses' credibility in the eyes of the grand jury.
Second, the grand jury did not hear of the defendant's own statements to police that he had been home with a friend (Simon Holley) at the time of the shooting. As the judge ruled, that the grand jury did not hear of the defendant's denials of his own involvement did not necessarily result in a distorted or misleading presentation. See Commonwealth v. McGowan, 400 Mass. 385, 388 (1987) (viewing with skepticism "the assertion that a prosecutor has an obligation in every case to give a potential defendant's version of the events to a grand jury"). Moreover, once again, the defendant's failure to include in the record his actual statements to the police hampers our ability to evaluate the effect that those statements would likely have had on the grand jury.
Third, the grand jury did not hear of the defendant's friend Holley's statement to police that he was at the defendant's home with the defendant at the time of the shooting. The judge viewed this omission as unlikely to have affected the grand jury, in light of the lack of specificity about the actual time of the shooting. The defendant has not persuaded us of any error in that ruling. Nor has he included Holley's actual statement in the record before us.
Fourth and finally, the grand jury were told of Tito Rivera's statement to police, in which he described the shooting and said that the defendant had a motive to harm him and had tried to shoot him three days earlier (on July 26). But, the defendant complains, the grand jury were not told of Rivera's later statement to a defense investigator (memorialized by the investigator and in the record) that he "did not remember much about the [alleged July 26 shooting], as he was high off pot and drunk [at] the time," and that he had "changed his life around" and did "not want to get involved."[9] Yet nothing in the record shows that the defense had passed this statement along to the Commonwealth by the time of the grand jury presentation. The Commonwealth could not present information that it did not possess.
In any event, Rivera's statement to the investigator, if presented to the grand jury, would not have greatly undermined the credibility of his statement to the police. Although his police statement contained details of the July 29 shooting, it did not identify the defendant as the shooter, or even place the defendant at the scene. Rather, its main significance was on the issue of the defendant's motive based on past interactions, including the alleged July 26 shooting.[10] Accordingly, that the grand jury did not know of Rivera's subsequent statement that he could not remember the details of that alleged shooting did not "likely ... affect[ ] the grand jury's decision to indict." Clemmey, 447 Mass. at 131.
In sum, on this record we agree with the judge that the exculpatory evidence, "if laid before the grand jury, would almost certainly have left unaltered the disposition to indict." Commonwealth v. Biasiucci, 60 Mass. App. Ct. 734, 738 (2004). Although the better course would have been for the Commonwealth to present certain items of the exculpatory evidence, the failure to do so did not "seriously taint[ ]" the presentation. Clemmey, 447 Mass. at 130.
3. Ineffective assistance of counsel. The defendant asserts that his trial counsel was ineffective because she failed to move to dismiss so much of the firearm and ammunition indictments as charged the defendant with having previously been convicted of a "violent crime" as defined under the ACCA. The grand jury based these charges on evidence of a prior conviction of ABDW, but it heard no evidence about the nature of that offense. The defendant argues that there was insufficient evidence that the offense was a "violent crime," and that counsel was ineffective for failure to seek dismissal on that basis. We disagree.
It is not ineffective for counsel to decline to file a motion with little likelihood of success. Commonwealth v. Conceicao, 388 Mass. 255, 264 (1983). On this record, the defendant has not shown that the failure to move to dismiss the indictments "likely deprived [him] of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
As background we note that the ACCA incorporates the definition of violent crime set forth in G. L. c. 140, § 121, which provides in part that a violent crime is one punishable by imprisonment for over one year and that "has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another." The force involved must be "violent or substantial force capable of causing pain or injury." Commonwealth v. Colon, 81 Mass. App. Ct. 8, 18 (2011). Thus, as to the crime of assault and battery, "while harmful battery and reckless battery are violent crimes under the ... ACCA, offensive battery is not." Id. at 17-18. The defendant argues that this same distinction should apply in the ABDW context, and he points out that the grand jury heard no evidence that his ABDW was a violent crime involving the use of force, rather than merely an "offensive" ABDW, i.e., a slight but nonconsensual touching with a dangerous weapon.
But the defendant cites no case involving a conviction of "offensive" ABDW.[11] A more recent decision, after discussing Colon, concluded that ABDW committed by an adult[12] is a violent crime under the ACCA as a categorical matter, without any need to examine the evidence underlying a particular conviction. Commonwealth v. Widener, 91 Mass. App. Ct. 696, 703 (2017). See Commonwealth v. Rezendes, 88 Mass. App. Ct. 369, 372 (2015). Moreover, even absent these decisions, had the defendant moved to dismiss the ACCA portions of the indictments, the Commonwealth could likely have cured any perceived defects by presenting the grand jury with the additional evidence it possessed[13] that the defendant's ABDW involved use of "violent or substantial force capable of causing pain or injury" and thus was not merely an offensive touching. Colon, 81 Mass. App. Ct. at 18. For all of these reasons, the defendant has not shown in this direct appeal that counsel was ineffective in failing to move to dismiss the ACCA portions of the indictments. See Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002) (ineffective assistance claim based solely on trial record is "weakest form" of such claim).
4. Possession of ammunition. The defendant argues that because the gun found after the shooting and linked to him did not contain ammunition, there was insufficient evidence for the jury to have convicted him of unlawfully possessing ammunition.[14] We review to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).
The jury heard ample evidence regarding the defendant's possession of ammunition. As previously mentioned, shell casings found on Southgate Street were linked to the defendant's gun, and multiple witnesses testified that immediately after hearing gunshots, they saw the defendant bring a gun back into the Toyota through the window. Viewing the evidence in the light most favorable to the Commonwealth, a rational jury could have found beyond a reasonable doubt that the defendant possessed ammunition on July 29.
5. Rule 36 speedy trial. The defendant argues that his case must be remanded for findings on his motion to dismiss the indictments on rule 36 speedy trial grounds. He points out that neither the judge who denied the motion, nor the judge who denied a related motion for reconsideration, provided a calculation of how 1,113 days could be excluded from the rule 36 calculation. But the defendant cites no authority establishing that a judge must make written findings when denying a rule 36 motion.[15] Nor does he argue that either judge erred or abused his discretion in denying the motions. For these reasons, no remand is warranted.
Judgments affirmed.

According to police testimony, about ten hours after the victim was shot, Nicole Huezo, who was on Southgate Street during the shooting, identified "Candyman" as having fired shots from the Toyota. When initially identifying Candyman, Huezo stated that she was "one hundred percent" certain that it was him. The jury further heard that days later, Huezo retracted that identification over the telephone and refused to go to the police station.

The defendant does not dispute that this testimony was relevant to whether he possessed the gun and ammunition on July 29. Also, at oral argument, the defendant disavowed any claim that the jury were improperly left free to convict him based on evidence of the July 22 attempted shooting.

The defendant relies on Commonwealth v. Dean, 109 Mass. 349 (1872), in which there was evidence of assaults unrelated to the crimes charged in the indictments, the defendants requested an instruction that they could not be convicted for any assaults not so charged, the judge refused the instruction, and as a consequence the resulting convictions were reversed. Id. at 352. Unlike in Dean, however, the defendant here did not request such an instruction. In any event, we have explained above our conclusion that the judge's instructions as a whole adequately confined the jury to considering the charged offenses, i.e., those alleged to have occurred on July 29.

The grand jury heard that Huezo had initially identified Candyman as having fired shots from the Toyota, but then retracted that identification as a mistake and refused to provide police with a written statement. See note 1, supra. The defendant argues that the grand jury should also have been told that Huezo, when initially identifying Candyman, had said she was "one hundred percent" certain that it was him. We are not persuaded that this detail would have made a difference to the grand jury's finding of probable cause to indict, given Huezo's later retraction.

The defendant asserts that O'Brien gave a statement (which is not in the record) suggesting that the defendant hid the gun in the hours just after the shooting, whereas another witness gave statements suggesting that the gun might not have been placed where it was found until the night after the shooting. But the grand jury heard nothing about when after the shooting the gun was hidden or found; that issue was not material to the decision to indict.

Had the grand jury heard this evidence, they could also have been told of O'Brien's statement that she saw the defendant wipe down the gun with his shirt after the shooting.

Other omissions that the motion judge viewed as less significant, and as to which the record before us is deficient, include the following. The grand jury heard about Cisco Rivas's statement inculpating the defendant, but did not hear about Rivas's asserted statement, "I don't remember[,] I was drunk." Assuming Rivas made such a statement, we do not know what he said he did not remember. Likewise, the grand jury heard about Monroy's statement inculpating the defendant, but did not hear that he told police, assertedly to explain a change in his story, that he had been promised "[his] freedom," perhaps referring to the dismissal of other charges then pending against him. We have no context for this statement. Similarly, the grand jury did not hear what trial counsel asserted were the statements of witnesses suggesting that Candyman had a conflict with the victim, or Candyman's own assertedly contradictory accounts of his whereabouts on the night of the shooting. None of these statements is in the record before us.

In her order denying the motion to dismiss, the judge erroneously attributed this statement to Cisco Rivas. In light of our analysis of the statement's content, the error is of no consequence.

The defendant also complains that the grand jury were not told that a charge against him based on the alleged July 26 shooting was later dismissed. But from the grand jury minutes in the record, we see no indication that the grand jury were told of any such charge having been filed in the first place. Moreover, trial counsel stated at a hearing on September 14, 2010, that the July 26-based charge had not been dismissed until January (presumably of 2007), which was after the grand jury's November, 2006, indictments on the charges at issue here. The grand jury could not have been told of a dismissal that had not yet occurred.

The defendant cites Commonwealth v. Appleby, 380 Mass. 296 (1980), but nowhere in that case do we find such a concept.

The grand jury heard evidence that the defendant had been convicted of ABDW as an adult.

The jury at the defendant's second trial (on the ACCA portions of the indictments) heard evidence that the criminal complaint application for the ABDW alleged that the defendant "intentionally smashed his motor vehicle into [another individual's] motor vehicle" while persons were inside it. In this connection we add that, to the extent the defendant's brief asserts a direct claim that the grand jury lacked sufficient evidence for the ACCA portions of the indictments, see Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982), the claim is unpreserved, and the trial evidence just mentioned negates any substantial risk of a miscarriage of justice.

The defendant also argues that because the jury found him not guilty of murder, it was factually inconsistent for the jury to also find that he possessed ammunition. Factual inconsistencies, however, do not render convictions invalid. Commonwealth v. Scott, 355 Mass. 471, 475 (1969). In any event, there is no necessary factual inconsistency here. The jury could have found that the defendant was present and shooting, yet still have entertained a reasonable doubt that he fired the shot that killed the victim, based on Huezo's statements that Candyman was also shooting from inside the Toyota.

The Commonwealth, in opposing the motion to dismiss, provided calculations supporting its position.